# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-20117-02-JAR |
| | ) |
| JOSE RIOS-MORALES, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Before the Court is the Government's Motion in Limine (Doc. 50). The Court held a hearing on September 21, 2015, where it took under advisement the Motion in Limine to admit evidence related to a prior drug conspiracy. The Court has considered the evidence, as well as the arguments presented at the hearing and in the briefs. For the reasons described more fully below, the Government's motion to admit the prior conspiracy evidence is granted in part and denied in part.

## I. Background

Defendant Jose Rios-Morales is charged in the Superseding Indictment[1] with one count of knowingly and intentionally possessing and attempting to possess with the intent to distribute more than 50 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), 846 and 18 U.S.C. § 2. Rios is also charged with one count of knowingly and intentionally conspiring together with another to possess with the intent to distribute more than 50 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii).

---

[1] Doc. 23.

The Government's evidence at trial will include the testimony of Felipe Sifuentes-Cabrera, the co-defendant and alleged co-conspirator of Rios in this case. Sifuentes will testify about he and Rios forming a conspiracy with Rios's brother, Omar Rios-Morales, to distribute methamphetamine from February 2014 to November 2014. Sifuentes will testify that Rios introduced Sifuentes to Omar, so that Omar could supply methamphetamine to Sifuentes and Rios. Sifuentes will further testify that after negotiating a $6200 per pound price, Omar began supplying methamphetamine to Sifuentes, at first mailing the packages of methamphetamine from California, where Omar resided, to Sifuentes, in Kansas. Sifuentes also agreed to pay Rios $300 per pound, such that Sifuentes owed a total of $6500 per pound, $300 for Rios, $6200 for Omar. Sifuentes paid the $6500 to Rios, who then transmitted the $6200 to Omar by wire transfer.

Later, after packages containing six pounds of methamphetamine were seized by the United States Postal Service, the conspirators changed their method of delivery. Omar sent a load of 13 pounds of methamphetamine in a 1999 Chrysler Sebring that was loaded on a car hauler truck destined for Kansas. This truck was stopped by law enforcement in Oklahoma, the methamphetamine was seized after a consensual search. Through cooperation of the driver of that vehicle, law enforcement accomplished a controlled delivery of the methamphetamine to Sifuentes, who cooperated and identified Omar and Rios as the sender and intended recipient of the load of methamphetamine. In a series of controlled and recorded phone calls, Sifuentes, Omar and Rios arranged for the 1999 Chrysler Sebring to be delivered to Rios's apartment parking lot.

## II.    Government's 404(b) Notice

On August 6, 2015, Rios filed a Motion for Early Notice of 404(b) Evidence, seeking disclosure of 404(b) evidence in advance of the deadline in the Pretrial Order, 14 days before trial. The government did not respond until September 9, 2015, filing a Notice Pursuant to Federal Rule of Evidence 404(b) and Motion in *Limine*, 26 days before the October 5 trial date. In this thirty-three page notice and motion, the government devotes five pages to describing its evidence in this case, twelve pages to a memorandum of law in support of it's limine motion, and fourteen pages describing the wide-ranging evidence of an earlier conspiracy between Sifuentes, Rios and others that spanned October 2012 and January 2014. In fact this earlier conspiracy is charged in another case filed in this Court, against Sifuentes, Rios and ten other defendants.[2]

In its lengthy recitation of the evidence of this other conspiracy, the government fails to specify which evidence it seeks to introduce, leaving Rios to speculatively identify categories of evidence from his reading of the government's lengthy notice. At the hearing, the government indicated that it proposes to introduce a wide variety of evidence about this prior conspiracy, which preceded in time the conspiracy charged in this case, including: (1) testimony about multiple trips Sifuentes and Rios made to California in 2012 and 2013 to purchase methamphetamine, package and mail it to Sifuentes in Kansas; (2) wiretap recorded phone calls between Sifuentes and Rios concerning these drug transactions and other overt acts of the conspiracy; (3) wiretap recorded phone calls between Sifuentes and co-conspirators Eustaquio Marquez and Casimiro Vargas (Sifuentes' then supplier of methamphetamine), in which Rios did not participate; (4) evidence of controlled buys between Sifuentes and an undercover officer; (5) evidence related to law enforcement interception of a load of methamphetamine supplied by Vargas and destined for Sifuentes, and the arrest of the couriers driving that load, Guillermo Morales and Jose Soriano; (6) surveillance, wiretap recorded phone calls and other evidence

---

[2] *United States v. Sifuentes*, et al., 15-20020-JAR

from September 11 to September 13, 2013 of Sifuentes arranging a sale of methamphetamine to Eustaquio Marquez, in which Rios did not participate; and (7) surveillance, wiretap recorded phone calls and other evidence of Sifuentes arranging a sale of "the same" to Eustaquio Marquez on September 23, 2013 in which Rios did participate.

### III.    Discussion

The Government asserts two bases for admissibility of this evidence. First, it argues that the evidence of the prior conspiracy is admissible because it is inextricably intertwined with the evidence in this case, or is *res gestae*. Second, the Government contends that this evidence is admissible under Federal Rule of Evidence 404(b), as evidence of Defendant's knowledge, intent, and modus operandi.

#### Evidence as Inextricably Intertwined or *Res Gestae*

The Tenth Circuit has held that Rule 404(b) does not preclude evidence of "other acts which are so inextricably intertwined with the crime charged that testimony concerning the charged act would have been confusing and incomplete without mention of the prior act."[3] Additionally, Rule 404(b) does not bar evidence that is *res gestae*, or "part and parcel of the proof of the offense charged in the indictment."[4] Thus, other act evidence is admissible as intrinsic evidence despite Rule 404(b) if "the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged."[5]

---

[3] *United States v. Oles*, 994 F.2d 1519, 1522 (10th Cir. 1993) (internal quotations omitted); *United States v. O'Brien*, 131 F.3d 1428, 1432 (10th Cir. 1997).

[4] *United States v. Kimball*, 73 F.3d 269, 272 (10th Cir. 1995).

[5] *United States v. Lambert*, 995 F.2d 1006, 1007 (10th Cir. 1993).

The Court fails to see how the evidence of this prior conspiracy is inextricably intertwined, nor part and parcel of the evidence in this case, nor part of a single criminal episode. These are separate and distinct conspiracies, involving different periods of time, different transactions, and involving different actors, including ten other co-conspirators charged in the prior conspiracy, but not charged in the conspiracy in this case.  The government took this position in Case No. 15-20020 in opposing Rios's motion to sever, arguing that it had "charged two related but separate conspiracies as there is a clear break between organizations."[6]

The government contends that the prior conspiracy evidence is inextricably intertwined with the evidence in this case because it is necessary to prove "[t]he prior relationship of the parties, including how that relationship was established."[7]  The government argues that without this evidence of the involvement of Sifuentes and Rios in the prior drug conspiracy, the jury will not be able to consider the entire story, including Sifuentes's willingness to trust a stranger, Omar Rios, to supply him with drugs by mail, rather than face-to-face transactions.  Rios counters that there is no dispute that he and Sifuentes were long-term friends and that evidence of the prior conspiracy is not necessary to show that Sifuentes agreed to enter into a conspiracy with good friend Rios and his brother Omar Rios, to purchase drugs from Omar.  The Court agrees.

Furthermore, although the government argues that this evidence of the prior conspiracy meets the definition of inextricably intertwined in that without it the case will be confusing and incomplete, the Court finds that admission of the wide-ranging evidence the government seeks to offer may introduce confusion in the case.  Rios is charged with a conspiracy in this case that

---

[6] *United States v. Rios-Morales*, 15-20020-03-JAR, Doc. 156

[7] Doc. 50 at 23.

involved a number of transactions and acts; introducing evidence of many transactions and acts not charged in this case, and involving acts of persons who are not charged as conspirators in this case does not ameliorate confusion and may cause confusion.  Thus, the Court finds the proposed evidence is not admissible as inextricably intertwined or *res gestae*.

### Rule 404(b)

The Government argues in the alternative that the proposed evidence is admissible under Rule 404(b) because it tends to show Defendant's knowledge, motive, intent, preparation, plan, and identity.  In considering evidence under Rule 404(b), the Supreme Court case *Huddleston v. United States*[8] instructs courts to weigh four factors: (1) whether the evidence is offered for a proper purpose, (2) whether it is relevant, (3) whether the probative value is not substantially outweighed by its potential for unfair prejudice, and (4) whether the court provided a limiting instruction at defendant's request.[9]  "Whether evidence is relevant for a permissible purpose under Rule 404(b) is left to the discretion of the trial court."[10]  The Court addresses each factor in turn.

**A. Proper Purpose**

The Government advances several bases for admissibility of the prior conspiracy evidence under Rule 404(b).  First, it argues that the evidence is being offered to establish Defendant's identity by *modus operandi*.[11]  The Tenth Circuit has held that when evidence is offered to show

---

[8] 485 U.S. 681, 691 (1988).

[9] *Id.*; *United States v. Mares*, 441 F.3d 1152, 1156 (10th Cir. 2006) (citing *Huddleston v. United States*, 485 U.S. 681, 691 (1988)).

[10] *United States v. Robinson*, 978 F.2d 1554, 1561 (10th Cir. 1992) (citing *United States v. Harrison*, 942 F.2d 751, 759 (10th Cir. 1991)).

[11] Doc. 50 at 25.

6

identity by *modus operandi*, it must have a "signature quality."[12]  In determining whether a "signature quality" exists, courts consider the following non-exhaustive factors: (1) geographic location, (2) the unusual quality of the crime, (3) the skill necessary to commit the acts, and (4) use of a distinctive device.[13]  Courts will also generally consider whether the prior acts occurred closely in time and geographical proximity to the charged act, whether the prior acts and the charged offense share similar physical elements, and whether the charged offense and the other acts are part of a common scheme.[14]  Furthermore, the Tenth Circuit has explained,

> the weight to be given to any one element and the number of elements necessary to constitute a "signature" are highly dependent on the elements' uniqueness in the context of a particular case. In other words, a few highly unique factors may constitute a "signature," while a number of lesser unique factors "although insufficient to generate a strong inference of identity if considered separately, may be of significant probative value when considered together."[15]

Here, the Government argues that Defendant's *modus operandi* is demonstrated by several factors:

> The defendants used the same method to obtain the same type of drugs in the 15-20020-01-12 conspiracy as they did in the present case.  The defendant utilized FedEx to ship drugs in 15-20020-01-12 and used the United States Postal Service to ship drugs in the present case.  The defendants obtained methamphetamine on credit then utilized wire transfers in both cases to pay for multi-pound shipments of drugs from California.

Although the two conspiracies occurred closely in time and geographic proximity, the Court finds this evidence insufficient to constitute a "signature quality" among the crimes.  The common elements—the use of shipping entities, the sale of methamphetamine, wire transfers,

---

[12] *Mares,* 441 F.3d at 1159 n. 3 (citing *United States v. Oberle,* 136 F.3d 1414, 1419 (10th Cir.1998)); *see also United States v. Gutierrez,* 696 F.2d 753, 755 (10th Cir. 1982).

[13] *United States v. Shumway*, 112 F.3d 1413, 1420 (10th Cir.1997) (citations omitted).

[14] *Mares*, 441 F.3d at 1158.

[15] *Shumway*, 112 F.3d at 1420 (citing *United States v. Myers*, 550 F.2d 1036, 1045 (5th Cir.1977)).

and purchases on credit—are not sufficiently "distinctive" or "unique" to constitute a "signature quality." Indeed, these are common elements of many drug conspiracies. Therefore, the Court finds the evidence is not admissible to establish Defendant's identity by *modus operandi*. Nor can the Court find that this evidence is admissible to show preparation and plan. Although the government offers those as bases for admissibility, it does not explain how these bases relate to the evidence in this case.

The government also seeks to admit the prior conspiracy evidence to prove Defendant's motive, knowledge and intent. The government argues that "defendant cannot claim he had no knowledge of Sifuentes' involvement in drug trafficking, or that he was merely assisting Sifuentes by mistake or accident . . . given his prior involvement in the very same activity with different conspirators."[16] The government also argues that the evidence tends to show motive; after Sifuentes' relationships with suppliers failed for economic reasons, Rios and Sifuentes had a motive to form a new conspiracy with a new supplier, Omar Rios.

Assuming knowledge, intent and/or motive are at issue in this case, the Court finds that some of the evidence proposed by the government is admissible for a proper purpose, and is relevant, and more probative than prejudicial, as more fully explained below.

## B. Relevance

Evidence is relevant under the second *Huddleston* factor if it "tends to prove or disprove one of the elements necessary to the charged offense."[17] The Government argues that the proposed evidence is relevant because it "explains why the present conspiracy was formed, the basis for trust between the conspirators, and the development of the relationship between the

---

[16] Doc. 50 at 26.

[17] *Mares*, 441 F.3d at 1156–57.

defendant and Sifuentes."[18]  To the extent that the evidence shows that the parties entered into an agreement and that Rios entered into the agreement with the requisite knowledge and intent, the Court finds that evidence admissible as relevant.

Specifically, the Court finds relevant to Rios' knowledge and intent, Sifuentes' testimony that he had a prior friendship with Rios, and that he and Rios had engaged together in purchasing drugs from suppliers, with Sifuentes compensating Rios for accompanying Sifuentes on buying trips to California and helping Sifuentes package and mail the drugs back to Kansas. The Court further finds relevant to Rios' motive, that the prior arrangements between Sifuentes and his California suppliers failed because of unpaid debt, seizures of mailed packages, or other reasons set out in the government's recitation of evidence.

Indeed, Sifuentes' prior involvement in a drug conspiracy will be admissible anyway, to impeach his credibility.  The Court anticipates that Rios, if not the government, will elicit testimony from Sifuentes about Sifuentes' prior drug dealings, the fact that he pled guilty in the other conspiracy case before this Court and is testifying against Rios as part of a plea and cooperation agreement from which he hopes to gain benefit in terms of a reduced sentence.  In short, Sifuentes' testimony about his involvement in this prior drug conspiracy is admissible as impeachment evidence against Sifuentes and is also admissible as relevant to Rios' knowledge, intent and motive in this case.  It bears noting, however, that although this evidence is admissible to impeach Sifuentes testimony, the Court is <u>not</u> allowing evidence that Rios has also been charged in the other conspiracy case.  That evidence is <u>not</u> admissible in this case under any circumstances, unless Rios testifies in his own defense and this Court rules that it is proper impeachment.  In the event Rios testifies in his own defense, the Court expects the government

---

[18] Doc. 50 at 29.

9

or defendant to not delve into this line of testimony, however, without first seeking leave of Court.

Of course the government seeks to admit evidence beyond Sifuentes' testimony, including wiretap recorded phone calls between Sifuentes, Rios and others, as well as law enforcement surveillance of Sifuentes' drug transactions corroborating conversations in certain wiretap recorded phone calls, law enforcement seizure of a mailed package, and law enforcement seizure of a car load of methamphetamine driven by Morales and Soriano.  This testimony can only be characterized as evidence offered to bolster Sifuentes' testimonial story about he and Rios' involvement in a prior drug conspiracy, and the legal and economic developments that caused that conspiracy to fail.   For the reasons explained below, this other evidence, beyond Sifuentes' testimony is not admissible.  Even if the Court were inclined to find such evidence relevant, the evidence is prejudicial to an extent that far outweighs any probative value relating to Rios's motive, intent or knowledge.

### C. Probative Value vs. Unfair Prejudice

Under the third *Huddleston* factor, the Court must apply the Federal Rule of Evidence 403 balancing test, whereby "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."[19]  Unfair prejudice occurs when the proposed evidence "makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant *wholly apart* from its judgment as to his guilt or innocence of the crime charged."[20]  As discussed above, Sifuentes' testimony about he and Rios' involvement in the prior drug conspiracy is probative of Rios'

---

[19] Fed. R. Evid. 403.

[20] *United States v. Ford*, 613 F.3d 1263, 1268 (10th Cir. 2010) (internal quotations omitted).

knowledge and intent. And, on balance, the Court finds that the probative value of this evidence outweighs any prejudicial effect. The government must necessarily prove that Rios acted with knowledge and intent.

According to the government's notice and motion in *limine*, the evidence of the conspiracy in this case largely consists of: (1) Sifuentes' testimony about the conspiracy; (2) law enforcement seizure of a package of methamphetamine addressed to Sifuentes (the government does not state whether the sender of the package was identified as Omar); (3) with the cooperation of the driver of car hauler, controlled delivery of a load of methamphetamine secreted in a 1999 Chrysler Sebring, to the delivery location in Olathe, Kansas; (4) surveillance of Sifuentes taking delivery of the car; (5) with Sifuentes' cooperation, a controlled delivery to Rios' apartment of the 1999 Chrysler Sebring; (6) recorded phone calls between cooperating Sifuentes, Rios and Omar discussing delivery of the car containing the load of methamphetamine and moving the contents of the load; (7) Sifuentes and Rios being together when one of them opened the door to the Sebring and reached inside; and (8) the arrest of Sifuentes and Rios as they stood next to the open door of the Sebring from which a package of methamphetamine was unzipped and clearly visible from outside of the vehicle.

Based on this recitation of the evidence, the Court finds that Sifuentes' testimony about Rios' prior involvement in procuring drugs with Sifuentes is highly probative of his knowledge and intent, and particularly probative in interpreting and understanding his state of mind during his phone conversations with Sifuentes and Omar and during the time he was with Sifuentes and in the presence of the 1999 Chrysler Sebring. Although Sifuentes' testimony concerning Rios prior involvement is clearly prejudicial, the Court concludes that on balance, its probative value outweighs the prejudicial effect. The jury will necessarily learn that Sifuentes was involved in a

prior drug conspiracy. It is also undisputed that Sifuentes and Rios were long-standing friends. The fact that their friendship may have included prior criminal involvement in a drug conspiracy is not prejudicial to the extent that it outweighs the probative value of this evidence in this case.

With respect to the other evidence of Rios involvement in a prior drug conspiracy, beyond Sifuentes' testimony, the Court finds that the probative value of such evidence does not outweigh its prejudicial effect. First, most of this evidence has little probative value, because it involves transactions, wire tapped recorded conversations, or law enforcement activity that Rios was neither a participant of, nor involved in. This evidence offers little or no evidence of Rios' knowledge or intent, and the prejudicial effect, of introducing confusion and bad acts of others with whom Rios had little or unknown association, outweighs the slim probative value.

The balance of the evidence the government seeks to admit under 404(b) is wiretap recorded phone conversations between Sifuentes and Rios. While conversations in which Rios discussed drug transactions is obviously probative in terms of his knowledge and intent, in this case the Court finds that this evidence is more prejudicial than probative, not based on a factual analysis of the content of the conversations, but based on the nature of the evidence, and a defendant's right to discover such evidence in time to challenge such evidence.

In this case, the government seeks to admit wiretapped recorded phone conversations that are evidence in the prior conspiracy case. Although this is evidence in the other case, in this case the government disclosed the evidence to Rios as evidence in a "related case." Moreover, Rios discovered this evidence in the other conspiracy case as well, as Rios is a defendant in that case and is represented by the same counsel in both cases. But, not until September 9, 2015, when the government filed its 404(b) notice in this case was Rios on notice that the government intended to use in this case, certain wiretap evidence from the other case. The motions deadline in this

case, has long since passed;[21] it is axiomatic that Rios was entitled to much earlier discovery of this evidence and much earlier notice that the government intended to offer this evidence in this case, so that Rios would have an informed opportunity to challenge this evidence by way of a suppression motion or otherwise. Having been denied that right in this case, admission of such evidence would be highly prejudicial to Rios in this case.

And, the government is not in a position to argue that Rios could have challenged this evidence in a suppression motion in the other conspiracy case. The Court judicially notices that that case, United States v. Sifuentes, et al., 15-20020-JAR[22] has been designated a complex case, given that it has twelve defendants, and voluminous discovery. The defendants have thus far discovered more than 13,000 pages of documents, 350 photographs, 18,428 pages of wiretap affidavits, pen and toll data, line sheets and other materials on five separate target phones, thousands of audio phone calls (mostly in Spanish), examination of multiple cellular phones and more than two dozen recorded interviews. And discovery is continuing. Indeed, in that case, the government has indicated that *most* of the discovery will be completed by January 17, 2016; and this Court has set a motions deadline of February 1, 2016. Needless to say, Rios would suffer extreme prejudice if the Court were to allow the admission of wiretap evidence from this other complex case in which discovery is not nearly completed. To suggest, as the government did at the *limine* hearing, that Rios should have somehow known to file a motion to suppress in this case, is disingenuous.

### IV.  Conclusion

The government is allowed to elicit testimony from Felipe Sifuentes that he was engaged in a prior drug conspiracy in 2012 and 2013 which he purchased drugs from suppliers in

---

[21] Pretrial Order No. 2 (Doc. 21) set February 9, 2015 as the pretrial motions deadline.
[22] The undersigned judge is assigned 15-20020 as well.

13

California, and traveled to California to receive, package and mail the drugs to Kansas.  The government will be allowed to elicit testimony from Felipe Sifuentes that his friend Jose Rios-Morales accompanied him on his trips to procure the drugs in California, assisted him and was compensated by Sifuentes for this.  The government is allowed to elicit testimony from Felipe Sifuentes that by late 2013 or January 2014, due to economic, legal or other reasons, he was no longer able to deal with his prior suppliers and that Rios introduced Sifuentes to his brother Omar, leading to the formation of the conspiracy as charged in this case.

The government is not allowed to offer other evidence of phone conversations, surveillance, law enforcement activity, or any other type of evidence beyond what the Court describes above.

Further, the government and Rios may offer evidence that Sifuentes was charged and pled guilty to a charge or charges in the other case, pursuant to a plea and/or cooperation agreement, as standard impeachment evidence concerning a testifying cooperator.  But, absent further order of this Court, neither the government nor Rios may offer evidence that Rios has been charged in that other case.

**IT IS THEREFORE ORDERED BY THE COURT** that the Government's Motion in Limine (Doc. 50) is **granted in part and denied in part**.

**IT IS SO ORDERED.**

Dated: <u>September 24, 2015</u>

                                               S/ Julie A. Robinson
                                              JULIE A. ROBINSON
                                              UNITED STATES DISTRICT JUDGE